JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Kenneth E. Jackson, appeals from the judgment of the Common Pleas Court, rendered after a bench trial, finding him guilty of drug trafficking and possession of drugs, and sentencing him to one year incarceration. For the reasons that follow, we affirm.
 {¶ 2} The record reflects that in October 2004 the Grand Jury indicted Jackson on possession of drugs in violation of R.C.2925.11, drug trafficking in violation of R.C. 2925.03, and possession of criminal tools in violation of R.C. 2923.24.
 {¶ 3} At the hearing regarding Jackson's motion to suppress, Cleveland police detective Todd Clark testified that sometime prior to August 2004, a detective from the Southeast Area Law Enforcement narcotics unit contacted him regarding using an informant to set up a buy/bust operation involving a drug dealer named Loren Franklin. The operation was set for August 5, 2004.
 {¶ 4} The informant telephoned Franklin, who told him to meet him at his parents' home located at 3485 East 105th Street in Cleveland, Ohio. Detectives involved in the operation photocopied $4000 and gave the money to the informant for the buy.
 {¶ 5} According to Clark, when he arrived in an unmarked car and parked just north of the house at 3485 East 105th Street, he observed a Chevy Tahoe with its running lights on and a male in the driver's seat parked at the curb just south of the house. It appeared the driver was waiting for something.
 {¶ 6} The informant arrived in an undercover car a short time later. The informant then telephoned Franklin, who told him that he was on his way.
 {¶ 7} Franklin drove up in a white Mitsubishi, which he parked near the curb between Clark's surveillance vehicle and the Chevy Tahoe. A green Thunderbird followed Franklin, pulled up and parked in the street by the Mitsubishi and Tahoe. Franklin, the informant, and the driver of the Thunderbird then all conversed by the Thunderbird. A short time later, the driver of the Thunderbird drove away; the informant then returned to his car and drove away.
 {¶ 8} Clark testified that he then saw Franklin open the trunk of the Mitsubishi. He observed another vehicle with several women in it pull up and saw the driver of the Tahoe, later identified as Jackson, get out of the Tahoe and begin talking with the women and Franklin as they all stood on the sidewalk together. The informant then advised Clark that the buy had been completed and Clark gave the signal for the take-down.
 {¶ 9} Maple Heights police officer Jeff Canter testified that his responsibility during the take-down was to secure the house. As he was exiting the house after it was secured, he walked by the Tahoe and saw through its windows an open blue plastic bag on the backseat containing, what he believed to be, in light of his experience as a narcotics officer, marijuana. Jackson was then arrested. After his arrest, the police found $200 of the informant's "buy money" on his person. The police also found two bags containing nearly 800 grams of marijuana in the trunk of Franklin's car.
 {¶ 10} The trial court denied Jackson's motion to suppress and the case proceeded to trial. Officers Clark and Canter essentially repeated their testimony as given during the suppression hearing. Tracy Kramer, a scientific examiner in the Cleveland police department forensic laboratory, testified for the State that the contents of the plastic bag found on the backseat of the Chevy Tahoe tested positive for marijuana.
 {¶ 11} Cleveland police officer John Dlugokinski, who also assisted with the take-down, testified that he had extensive prior experience with drug arrests. He opined that, in light of his experience, the amount and type of packaging of the marijuana found on the backseat of the Chevy Tahoe indicated that it was for sale to larger-scale drug dealers for breakdown into smaller amounts for street-level sales. Dlugolinski testified further that this size bag could normally be broken down into 60 smaller bags for sale at $5 each.
 {¶ 12} Although Jackson called co-defendant Franklin as a witness, Franklin asserted his Fifth Amendment right against self-incrimination and refused to testify.
 {¶ 13} Jackson then offered his version of the events of August 5, 2004. According to Jackson, he had loaned Franklin money during a gambling game earlier in the day. When Jackson later called Franklin to ask for his money, Franklin told him to meet him at his house. Jackson testified that his friend Jimmy Maxi, the owner of the Chevy Tahoe, took him to Franklin's house, where they sat in the truck with the lights on and the engine running while they waited for Franklin. When Maxi got tired of waiting, he got out of the Tahoe and walked down the street to the store.
 {¶ 14} According to Jackson, a green Thunderbird and a white Mitsubishi were already parked in front of Franklin's house when he and Maxi pulled up in the Tahoe. A short time later, another car pulled up. A male got out of the car and sat on the porch of the house until Franklin's sister came out and told the male that he had to leave. She then came down the steps and Jackson got out of the Tahoe to talk to her.
 {¶ 15} Franklin then arrived, followed by another car with several women in it. As they all stood on the sidewalk talking, Jackson asked Franklin for the money he had loaned him earlier that day. Franklin gave Jackson $200 and told him he would pay him another $100 later.
 {¶ 16} According to Jackson, the police then arrived and he, Franklin and the women were handcuffed and taken inside the house. When the detectives showed Jackson the bag of marijuana they had found on the backseat of the Tahoe, Franklin told the police, "All this weed is mine. Kenneth Jackson had nothing to do with this." Jackson denied ownership of the marijuana and the cell phones also found on the backseat of the Tahoe.
 {¶ 17} The trial judge subsequently found Jackson guilty of drug trafficking and possession of drugs, but not guilty of possession of criminal tools, and sentenced him to one year incarceration on the drug trafficking conviction and ten months on the drug possession conviction, to be served concurrently.
 MOTION TO SUPPRESS {¶ 18} In his first assignment of error, Jackson contends that the trial court erred in denying his motion to suppress evidence of the marijuana found on the backseat of the Chevy Tahoe and the $200 in "buy money" found on his person as the products of an unlawful search and seizure in violation of the Fourth and Fourteenth Amendments.
 {¶ 19} Jackson contends that the police did not have reasonable suspicion to stop him and no probable cause to arrest him. He argues that it is undisputed that the Tahoe belonged to Jimmy Maxi and there was no evidence that he handled the marijuana found in the truck or that he otherwise possessed or used drugs. He argues further that although the police saw Franklin engage in drug transactions with the informant and the driver of the green Thunderbird, none of the officers testified that they saw him and Franklin engage in a drug deal.
 {¶ 20} Our standard for review of a trial court's judgment regarding a motion to suppress was set forth by this court inState v. Curry (1994), 95 Ohio App.3d 93, as follows:
 {¶ 21} "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard." (Citations omitted.)
 {¶ 22} A police officer may make a brief, warrantless, investigatory stop of an individual where the officer reasonably suspects that the individual is or has been involved in criminal activity. Terry v. Ohio (1968), 392 U.S. 1, 20 L.Ed.2d 889,88 S.Ct. 1868. In assessing that conclusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. State v. Andrews (1991),57 Ohio St.3d 86, citing Terry, supra. Whether an investigatory stop is reasonable depends upon the totality of circumstances surrounding the incident. State v. Williams (1990), 51 Ohio St.3d 58, 60.
 {¶ 23} Applying these principles, we conclude that the investigatory stop of Jackson was reasonable. When Detective Clark arrived on the scene to conduct surveillance, he saw Jackson sitting in the Tahoe, its running lights and engine on, as if he were waiting for something. He saw Franklin arrive on the scene and immediately conduct a drug transaction with the driver of the green Thunderbird and then with the informant. After both of these cars drove away, Franklin immediately went to the trunk of his car, opened it and then began interacting with Jackson, who had exited the Tahoe. On these facts, it was reasonable for the officers to believe that Jackson may have, or was about to, engage in a drug transaction with Franklin and, therefore, the initial stop of Jackson was warranted.
 {¶ 24} Likewise, the police had probable cause to subsequently arrest Jackson. The plain view doctrine, if applicable, permits police officers to seize contraband, evidence or the fruits or instrumentalities of crime without obtaining a prior search warrant. State v. Coleman, Ashtabula App. No. 2001-A-0012, 2002-Ohio-3124, at ¶ 15. For the plain view doctrine to apply to a warrantless seizure of property, it must be shown that 1) the initial intrusion which afforded the authorities the plain view was lawful; 2) the discovery of the evidence was inadvertent; and 3) the incriminating nature of the evidence was immediately apparent. State v. Williams (1978),55 Ohio St.2d 82, 85.
 {¶ 25} Here, it is obvious that the plain view doctrine applies to Detective Canter's discovery of the marijuana on the backseat of the Tahoe. The officers were at the scene for a buy/bust based on a tip from an informant, Canter saw the marijuana as he walked by the Tahoe after completing his assignment in the house, and he recognized the contents of the bag from his prior police experience. Therefore, under the plain view doctrine, the marijuana was lawfully seized. The lawful seizure of the marijuana from the Tahoe, where Jackson had been sitting, gave the officers probable cause to arrest him.
 {¶ 26} Because the officers had reasonable suspicion to stop Jackson and probable cause to arrest him, the trial court did not err in denying his motion to suppress. Appellant's first assignment of error is therefore overruled.
 SUFFICIENCY OF THE EVIDENCE {¶ 27} In his second assignment of error, Jackson contends that the evidence was insufficient to support his convictions.
 {¶ 28} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 29} Jackson was convicted of drug trafficking and possession of drugs. R.C. 2925.11, regarding drug possession, provides that "No person shall knowingly obtain, possess, or use a controlled substance."
 {¶ 30} Jackson argues that there is no evidence that he ever knowingly obtained, possessed or used marijuana because there is nothing to "tie" him to the marijuana found in the backseat of the Tahoe or to any drug activity in this case. Jackson contends that he did not own the Tahoe, there is no evidence that he had any knowledge of the marijuana in the backseat and none of the officers testified that they saw him handle or use the drugs.
 {¶ 31} A person acts knowingly, regardless of his or her purpose, when that person is aware that his or her conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). It is necessary to look at all the attendant facts and circumstances in order to determine if a defendant knowingly possessed a controlled substance. State v.Teamer (1998), 82 Ohio St.3d 390, 492.
 {¶ 32} Possession means "having control over a thing or substance," but it may not be inferred solely from "mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C.2925.01(K). Possession may be actual or constructive. State v.Haynes (1971), 25 Ohio St.2d 264. Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within the individual's immediate physical possession. State v. Hankerson
(1982), 70 Ohio St.2d 87, at the syllabus. It is not necessary to establish ownership of a controlled substance in order to establish constructive possession. State v. Mann (1993),93 Ohio App.3d 301, 308. A sizable amount of readily usable drugs found in close proximity to the defendant may be sufficient circumstantial evidence that defendant was in constructive possession of drugs. State v. Griffin, Cuyahoga App. No. 82979,2004-Ohio-2155, at ¶ 19, citing State v. Pruitt (1984),18 Ohio App.3d 50, 58.
 {¶ 33} Here, although there was no evidence that Jackson was handling the marijuana as he sat in the Tahoe, we find its proximity to him in the truck sufficient to demonstrate his constructive possession of the drugs. Detective Clark testified that he observed Jackson sitting in the driver's seat of the Tahoe. Neither Clark nor any of the other officers saw any passengers in the truck, nor did they see anyone else get in or out of the truck at any time. The marijuana was found in plain view in a blue bag in the center of the backseat of the truck. The only other objects on the backseat were two cell phones. The pictures of the bag and the testimony at trial further indicated that the marijuana was of a sizable amount. This evidence, if believed, is sufficient to demonstrate that Jackson knew the marijuana was in the Tahoe and was in constructive possession of it.
 {¶ 34} Jackson was also convicted of drug trafficking. R.C.2925.03, regarding drug trafficking, provides that "No person shall knowingly * * * (2) prepare for shipment, ship, transport, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 35} With respect to his drug trafficking conviction, Jackson argues that the evidence was insufficient to support his conviction because there was no evidence that he was working with or aiding and abetting Franklin. He contends that "mere presence" during the commission of a crime is not enough to render him an accomplice to drug trafficking.
 {¶ 36} We disagree with Jackson's assertion that he was "merely present" at the scene. First, it is apparent that he "transport[ed]" the marijuana in the Tahoe to the scene. Second, although Jackson argues that Franklin was the only seller at the scene, in light of the $200 of the informant's "buy money" found on Jackson's person, which could have only come from Franklin, a reasonable juror could conclude that Jackson sold the marijuana in the Tahoe to Franklin, but did not have time to give it to Franklin before the police moved in.
 {¶ 37} Construing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found all of the elements of drug possession and drug trafficking proven beyond a reasonable doubt. Accordingly, Jackson's second assignment of error is overruled.
 MANIFEST WEIGHT OF THE EVIDENCE {¶ 38} In his third assignment of error, Jackson contends that his convictions were against the manifest weight of the evidence.
 {¶ 39} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v.Thompkins (1997), 78 Ohio St.3d 380, 390. When a defendant asserts that his or her conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 40} Jackson asserts that a "manifest miscarriage of justice occurred" because "there is absolutely no evidence proving that [he] knew of the drugs in the vehicle or that he was involved in drug dealing in this case." As set forth above, however, we find that the State presented credible evidence that Jackson was in possession of the marijuana found in the Tahoe and, further, that he engaged in a drug transaction for which he was paid $200. After reviewing the entire record, weighing the evidence and considering the credibility of the witnesses, we are not persuaded that the trier of fact lost its way and created such a miscarriage of justice that Jackson's convictions must be reversed.
 {¶ 41} Appellant's third assignment of error is overruled.
 SENTENCING {¶ 42} At the time of Jackson's sentencing, R.C. 2929.14(B) provided that if an offender had not served a previous prison term, the trial court was required to impose the minimum sentence unless it found on the record that a minimum sentence would "demean the seriousness of the offender's conduct" or "not adequately protect the public from future crime by the offender or others."[1]
 {¶ 43} In his fourth assignment of error, Jackson contends that the trial judge erred by imposing more than the minimum allowable sentence because "there is nothing in the record to indicate that [he] had previously served a prison term." Contrary to Jackson's argument, the record reflects Jackson's admission that he had previously served a prison term:
 {¶ 44} "Q. Ken, how long have you been rehabbing houses?
 {¶ 45} "A. Since I've been out the penitentiary, in like '98."
 {¶ 46} Accordingly, R.C. 2929.14(B) did not apply to Jackson's sentence.
 {¶ 47} Jackson also argues that his non-minimum sentence violates the decision of the United States Supreme Court inBlakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed.2d 403, in which the Supreme Court applied the rule expressed in Apprendi v. New Jersey (2000), 530 U.S. 466, 490, 147 L.Ed.2d., 120 S.Ct. 2348 that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury [or admitted by the defendant] and proved beyond a reasonable doubt."
 {¶ 48} Here, the record is clear that Jackson admitted that he had served a prior prison sentence; no judicial fact-finding was necessary. Accordingly, Blakely is not implicated in any way.
 {¶ 49} Moreover, because the presumption of a minimum sentence found in R.C. 2929.14(B) applied only to those defendants who had never served a prior prison sentence, Jackson did not qualify for consideration of a minimum sentence under the statute and thus has no standing to now challenge the constitutionality of the statute.
 {¶ 50} Appellant's fourth assignment of error is therefore overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, J., concurs.
 Celebrezze, Jr., J., Concurs in Part and Dissents in Part withseparate opinion.
[1] In State v. Foster, Ohio St.3d, 2006-Ohio-856, the Ohio Supreme Court found R.C. 2929.14(B) unconstitutional and severed it, in its entirety, from Senate Bill 2.
 CONCURRING DISSENTING