[Cite as *Brunswick v. Ware*, 2011-Ohio-6791.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| CITY OF BRUNSWICK | | C.A. No.     11CA0114-M |
|---|---|---|
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| EDWARD WARE III | | MEDINA MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellee | | CASE No.     10 TRC 03428 |

DECISION AND JOURNAL ENTRY

Dated: December 30, 2011

CARR, Judge.

{¶1}    Appellant, the City of Brunswick, appeals the judgment of the Medina Municipal Court granting the motion to suppress filed by Edward Ware III.  This Court reverses.

I.

{¶2}    On May 20, 2010, police initiated a stop of Ware's truck at 1:41 a.m. in the parking lot of Big Lots in Brunswick, Ohio.  After Ware failed several field sobriety tests, he was charged with two counts of driving while under the influence pursuant to sections 434.01(a)(1)(A) and 434.01(a)(1)(D) of the Brunswick Codified Ordinances.  Ware pleaded not guilty to the charges.  On July 7, 2010, Ware filed a motion to suppress all evidence seized as a result of the traffic stop.  A hearing on the motion was held on October 6, 2010.  Subsequently, on October 19, 2010, the trial court issued a journal entry granting the motion to suppress.

{¶3}    The City filed a notice of appeal on October 21, 2010.  On appeal, the City raises one assignment of error.

II.

## ASSIGNMENT OF ERROR

"THE MEDINA MUNICIPAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO SUPPRESS EVIDENCE."

{¶4}     In its sole assignment of error, the City argues that the trial court erred in granting Ware's motion to suppress.  This Court agrees.

{¶5}     The City argues on appeal that the facts available to the officer, when viewed in their totality, gave rise to a reasonable suspicion that Ware was in the process of committing a theft offense.  Ware argues that the officer did not have a reasonable, articulable, suspicion of criminal activity and that the decision to stop the vehicle was based solely on a hunch.

{¶6}     The Supreme Court of Ohio has held:

"Appellate review of a motion to suppress presents a mixed question of law and fact.  When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."   (Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶8.

{¶7}     The Fourth Amendment of the United States Constitution and Section 14, Article I of the Ohio Constitution secure an individual's right to be free from unreasonable searches and seizures.  A traffic stop constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States* (1996), 517 U.S. 806, 809-810.  However, an investigative stop of a motorist does not violate the Fourth Amendment if the officer has a reasonable suspicion that the individual is engaged in criminal activity. *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 299, citing *Terry v. Ohio* (1968), 392 U.S. 1, 22.  Before a law enforcement officer may stop a vehicle, the officer must have a reasonable suspicion, based upon specific and articulable facts,

that an occupant is or has been engaged in criminal activity. *State v. Gedeon* (1992), 81 Ohio App.3d 617, 618. Reasonable suspicion constitutes something less than probable cause. *State v. Carlson* (1995), 102 Ohio App.3d 585, 590. The propriety of an investigative stop must be viewed in light of the totality of the circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, paragraph two of the syllabus.

{¶8} Officer Samuel Gagliardi of the Brunswick Police Department was the only witness to testify at the October 6, 2010 hearing. Officer Gagliardi testified as follows. In the early morning hours of May 20, 2010, Officer Gagliardi was driving his squad car on general patrol duty. As he traveled southbound on Pearl Road in Brunswick, Officer Gagliardi noticed a truck parked in the parking lot of Big Lots. Officer Gagliardi noticed that the truck, which was dark in color, was parked in an east/west direction in the parking lot despite the fact that all the parking spaces run north/south. The truck was parked next to pallets of mulch and soil. It was approximately 1:41 a.m. and Big Lots was not open for business at that hour. Officer Gagliardi testified that Big Lots generally has pallets of either mulch or soil that are stacked in the parking lot and remain there 24 hours a day. Officer Gagliardi further testified that he is required to patrol that parking lot as part of his duties in order to prevent possible thefts or mischievous activity. Officer Gagliardi testified that the truck was "[p]arked in front of the store, next to the pallets."

{¶9} When Officer Gagliardi noticed the truck, he made a left turn onto Laurel Road and entered the Big Lots parking lot. Officer Gagliardi testified that it was dark as he entered the parking lot. When Officer Gagliardi drove into the parking lot in his marked cruiser, the truck began to pull away diagonally across the parking lot without turning on its lights. The truck was

moving away from Officer Gagliardi's cruiser toward an exit that would have taken it onto Pearl Road.

{¶10} Officer Gagliardi initiated a traffic stop. The vehicle came to a stop in the middle of the parking lot. Officer Gagliardi identified Ware as the driver of the truck. Officer Gagliardi testified that when he approached the vehicle he observed that Ware's eyes were bloodshot, his speech was slurred, and there was a strong odor of alcohol emanating from his person. Officer Gagliardi testified that Ware had a wet spot around his neck that "came down to a V probably about halfway down his chest." Officer Gagliardi testified that there was a female in the passenger seat of the vehicle. When Officer Gagliardi asked Ware if he had been consuming alcohol, Ware responded that he had "three or four beers" when he and the passenger were at a club. Officer Gagliardi then administered several field sobriety tests, namely the horizontal gaze nystagmus test, the one-leg stand test, and the portable breath test. Based on the results of the tests, Officer Gagliardi placed Ware under arrest.

{¶11} On cross-examination, Officer Gagliardi was asked why he stopped Ware's vehicle. Officer Gagliardi responded, "Mr. Ware's vehicle was suspicious in nature due to the fact that the business was closed, and it was my duty to investigate to make sure that there was no possible theft offense occurring." Officer Gagliardi testified that he did not have reason to believe that Ware committed a traffic offense, although Ware had neglected to turn on his headlights when he attempted to leave the parking lot despite the fact it was dark. When asked if he had any reason to believe that Ware had committed a criminal act, however, Officer Gagliardi responded in the affirmative. Officer Gagliardi testified that there was "reasonable enough cause to believe that there was a -- a crime in progress or possibly to be in progress." When asked to elaborate on what he observed that night, Officer Gagliardi testified, "The Defendant was

parked. You could tell that the car was occupied. I noticed he tapped the brake one time, and making the back taillights light up, you know, adding to the fact that there was a person inside the car; parking in the wrong direction." Defense counsel asked a series of questions relating to how Big Lots displayed their hours of operation. Officer Gagliardi testified that Big Lots' hours are posted on the front door of the store but he had never seen anyone walk up to look at the store hours in the middle of the night. Officer Gagliardi further testified that Ware was not parked in a direction that faced the front doors where the store hours were posted. Officer Gagliardi indicated that he had not received a report regarding any criminal activity in that area on that particular night. On redirect examination, Officer Gagliardi clarified that he had received reports of thefts on prior nights.

{¶12} The trial court concluded that there was no legal basis for the initial detention of the vehicle. The trial court noted that because Ware was not on a street or highway, he was not required to turn on his headlights in the parking lot and, therefore, there was no evidence of a traffic violation. The trial court further concluded that Officer Gagliardi did not have a reasonable, articulable suspicion of any imminent criminal activity. The trial court also found that the police officer could not have stopped the vehicle as part of a community caretaking function because there was no evidence that Officer Gagliardi had a reasonable belief that the driver of the vehicle needed emergency assistance.

{¶13} Based upon the evidence presented at the hearing on the motion to suppress, we conclude that Officer Gagliardi had a reasonable suspicion, based on specific and articulable facts, that Ware was in the process of committing a criminal act. This Court has previously held that police officers had reasonable suspicion to justify an investigatory stop of a defendant's truck when the officers observed the defendant driving behind a closed business at 3:00 a.m.

with the headlights of his truck extinguished. *Cuyahoga Falls v. Pollack*, 9th Dist. No. 23988, 2008-Ohio-2024. In this case, Officer Gagliardi observed Ware's truck in the Big Lots' parking lot 1:41 a.m. The store was not open for business as it was the middle of the night. The truck's headlights were extinguished and it was not parked in a parking space. Rather, Ware had pulled his truck up next to pallets of soil and mulch which are left outside overnight. Officer Gagliardi testified that there had been a history of theft in that area. A truck, by its very nature, is a vehicle designed to transport cargo. While the lights of the truck were extinguished, Officer Gagliardi knew the truck was occupied because he observed the driver tap the brakes. When Officer Gagliardi entered the parking lot in his cruiser, Ware immediately attempted to exit the parking lot by driving diagonally across the lot without turning on his headlights. These circumstances, when viewed in their totality, constituted reasonable, articulable facts upon which Officer Gagliardi could base his decision to stop the vehicle.

{¶14} The City's sole assignment of error is sustained.

III.

{¶15} The City's assignment of error is sustained. The judgment of the Medina Municipal Court is reversed and the cause remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

MOORE, J.
CONCURS

BELFANCE, P. J.
DISSENTS, SAYING:

{¶16} I respectfully dissent. The Fourth Amendment to the United States Constitution provides:

> "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

{¶17} Thus, absent a warrant and probable cause, citizens are protected from the unconstrained exercise of police discretion in effecting a seizure or search of their person or their property. In *Terry v. Ohio* (1968), 392 U.S. 1, the United States Supreme Court created a narrow

exception to the requirement of probable cause prior to effecting a search or seizure. In *Terry,* the Court determined that a police officer may momentarily stop and frisk a person where, based on specific facts, the officer concludes that the person has committed a crime or is about to commit a crime and may be armed and dangerous. Id. at 30. The Court emphasized that it had created very narrowly drawn authority to search for weapons without a warrant. Id.

{¶18} In determining whether a temporary seizure without probable cause is itself permissible, *Terry* established that the officer must have reasonable articulable suspicion of criminal activity based on "specific and articulable facts" and "rational inferences from those facts[.]" Id. at 21. This initial inquiry must be satisfied in order to justify any detention at its inception.

{¶19} In this case, the officer observed a vehicle in the parking lot at 1:41 a.m. The officer did not observe any specific activity of the vehicle or its occupants. When the vehicle began to move, the officer stopped the vehicle. The officer admitted that he stopped the vehicle based upon a "hunch."

{¶20} The trial court found that the officer had not observed any traffic violations and that the officer did not have any belief that the defendant was not validly licensed or that the vehicle was not properly registered. The court further found that there had been no reports of criminal activity in the parking lot during the evening and morning in question. Further, although the officer alluded to reports of criminal activity in the past, the trial court found that "[n]o evidence was submitted as to the nature or location of businesses involved in these non-specific reports." The trial court thus concluded that the officer did not witness any traffic violation and did not otherwise have a reasonable and articulable suspicion of any imminent criminal activity.

{¶21}  At a hearing on a motion to suppress, the trial court serves as the trier of fact and is in the best position to weigh the evidence and resolve factual questions in part through evaluating the credibility of the witnesses.  Accordingly, this Court must give deference to the factual findings of the trial court if they are supported by competent, credible evidence.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372 at ¶8.  The trial court's factual findings are supported by competent credible evidence.  Based upon those findings, it is apparent that the officer did not have reasonable suspicion to conduct a seizure as there were no *specific objective facts* that Mr. Ware was involved or about to be involved in criminal activity.  *Brown v. Texas* (1979), 443 U.S. 47, 53. See, also, *Terry,* 392 U.S. at 6, 23, 27-28 (concluding reasonable suspicion existed after officer observed individuals casing a business for period of time).  Here, the officer observed a car parked in a lot and nothing more.  There could have been many reasons why a man and a woman would be parked in a parking lot.  The fact that the officer might have thought it suspicious that someone was stopped in the parking lot at 1:41 a.m. certainly may have warranted further surveillance, however, a seizure is not constitutionally permissible simply because circumstances appear suspicious or an officer has a hunch about the situation.  See *Brown,* 443 U.S. at 52-53 (concluding that a stop of a suspicious looking individual in  a bad neighborhood was not constitutionally permissible because even though the situation looked suspicious, the officer was unable to point to any facts that appellant was involved in criminal conduct); *Delaware v. Prouse* (1979), 440 U.S. 648, 661  (concluding that random stop of a vehicle was not permissible); *State v. Paschal*, 169 Ohio App.3d 200, 2006-Ohio-5331, at ¶¶20-22 (concluding that the stop of a vehicle was impermissible where stop was effectuated based upon the officer's hunch).

{¶22} The United States and Ohio Constitutions secure the right of people to freely travel on streets and roadways at any hour of the day or night. We live in a society where many people work nighttime hours and many stores and restaurants are open 24 hours daily. As emphasized by the United States Supreme Court, "people are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles." *Prouse,* 440 U.S. at 663.

{¶23} The trial court's findings of fact were supported by competent, credible evidence and it properly applied the law to those facts. Accordingly, because the officer did not possess a reasonable articulable suspicion of possible criminal activity based upon specific facts as opposed to a hunch, I would affirm the decision of the trial court.

APPEARANCES:

J. MATTHEW LANIER, Attorney at Law, for Appellant.

WILLIAM LEFAIVER. Attorney at Law, for Appellee.