[Cite as *State v. Keith*, 2016-Ohio-3056.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 102981, 103006, and 103009**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DAVONNE KEITH

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-14-587294-B, CR-14-587491-B, and CR-15-592623-A

**BEFORE:** Laster Mays, J., Kilbane, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 19, 2016

**ATTORNEY FOR APPELLANT**

Paul A. Mancino
Mancino Mancino & Mancino
75 Public Square Building, Suite 1016
Cleveland, Ohio 44113-2098


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Frank Romeo Zeleznikar
Marc Bullard
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

**{¶1}** Defendant-appellant Davonne Keith ("Keith") appeals his 27-year sentence on Cuyahoga C.P. Nos. CR-14-587294-B, CR-14-587491-B, and CR-15-592623-A. After a review of the record, we affirm in part, reverse in part, and remand for resentencing.

**{¶2}** Appellant has filed three separate appeals. Pursuant to Loc.App.R. 3(C) the cases have been consolidated sua sponte for hearing. In Case No. CR-15-592623-A,[1] Keith pleaded no contest to all six counts charged in the indictment. The prosecutor elected to have Keith sentenced on Counts 1, 3, 5, and 6. Count 2 was an allied offense to Count 1, drug trafficking (cocaine), a first-degree felony, in violation of R.C. 2925.03(A)(2) with a schoolyard specification; Count 4 was an allied offense to Count 3, drug trafficking (heroin), a first-degree felony, in violation of R.C. 2925.02(A)(2) with a schoolyard specification; Count 5, drug possession in violation of R.C. 2925.11(A) (naloxone), a fifth-degree felony and Count 6, possessing criminal tools, a fifth-degree felony, in violation of R.C. 2923.24(A). All four counts contained forfeiture specifications. Keith was sentenced to 22 years of imprisonment.

**{¶3}** In CR-14-587294-B, Keith pleaded guilty to one count of drug trafficking, one count of drug possession, and one count of possession of criminal tools; all fifth-degree felonies with forfeiture specifications. Keith was sentenced to 24 months in

<hr>

[1] Case No. CR-15-592623-A is a reindictment of Case No. CR-14-591153-A in order to add the schoolyard specification.

prison.   In Case No. CR-14-587491-B, Keith pleaded guilty to two counts of trafficking (cocaine and heroin), two counts of possession, and one count of possession of criminal tools; all fifth-degree felonies with forfeiture specifications.   Keith was sentenced to 36 months in prison.   The sentences on the three cases were ordered to be served consecutively, for an aggregate 27-year term of imprisonment.

{¶4} Keith appeals the trial court's sentence and assigns seven assignments of errors for our review.

> I.     Defendant was denied due process of law when the court failed to afford the defendant his constitutional right of allocution.
>
> II.   Defendant was denied due process of law when the court imposed consecutive sentences by a rote recitation of the statutory factors.
>
> III.    Defendant was denied due process of law and equal protection of the law when he was sentenced to a greater sentence than that of a codefendant.
>
> IV.   Defendant was denied due process of law when the court overruled the motion to suppress.
>
> V.     Defendant was denied due process of law when the court failed to grant a motion to suppress when defendant was effectively seized by the actions of the police.
>
> VI.     Defendant was denied due process of law and equal protection of the law when the court overruled defendant's motion to strike the schoolyard specification.
>
> VII. Defendant was subjected to unconstitutional multiple punishments when he was separately sentenced for the simultaneous possession of different drugs.

We will first address the fourth, fifth, and sixth assignments of error because these assignments address court proceedings prior to sentencing.   We will then address the

first assignment of error because it is dispositive of the remaining second, third, and seventh assignments of error.

## I. Facts

{¶5} In Case No. CR-15-592623-A, Keith filed a motion to suppress. At the hearing, Detective Lawrence Smith ("Smith"), a five-year detective for the city of Cleveland, testified that he was touring Lorain Avenue, along with six other police officers, in connection with complaints about drug activity and prostitution in the area. Smith was driving an unmarked vehicle when he saw a Dodge Charger driving slow on the north side of the street. The vehicle then backed into a vacant lot. Smith observed a woman approach and enter the vehicle. After watching for a second, Smith observed the driver, Keith, rolling something in white paper. Smith thought that since no one ever pulls into the vacant lot that these behaviors were indicative of drug activity.

{¶6} Smith notified Detective Robert Norman ("Norman"), a two- year vice detective, who was driving the take down car, of his observations. Norman and the other officers approached the Dodge Charger. Smith parked his vehicle and approached on foot. The officers ordered Keith to exit the vehicle and patted him down. While Keith was outside of the vehicle, Smith approached with his flashlight and saw a scale in the center console, underneath the radio, in plain view, of the Dodge along with brown powder residue. (Tr. 12.)

{¶7} Norman then testified that Smith notified him of Keith's suspicious behavior that could be related to illegal drug activity. Norman pulled into the parking lot, in front

of Keith's car, exited his vehicle, with his weapon drawn and ordered Keith to put his hands up. Norman stated that Keith did not immediately put his hands up, but rather hid something in his pants. At this point, Norman and the other officers ordered Keith to raise his hands again and announced themselves as Cleveland police officers. (Tr. 31.) Keith raised his hands and Norman saw suspected marijuana crumbs on Keith's lap. Keith was then handcuffed and detained pending results of the search of the car. (Tr. 35.) Norman was notified of the scale with heroin residue and a marijuana cigarette in the vehicle. (Tr. 35.) Keith was placed under arrest and searched. In his waistline was crack cocaine and heroin. (Tr. 37.)

{¶8} At the conclusion of the officers' testimony, the trial court denied the motion to suppress. The court stated,

> [T]hus it is clear to this Court based upon testimony in the case that Officer Smith did not have reasonable suspicion beginning with the car driving in a very slow manner, pulling into a vacant lot which in five years of surveillance he had not seen any cars utilize that lot at dark. He also said he saw the defendant rolling a cigarette which he had a suspicion that it was marijuana. This Court is going to overrule the motion to suppress.

(Tr. 33 - 34.)

{¶9} After the trial court's ruling, Keith entered a no contest plea in Case No. CR-15-592623-A, and guilty pleas in Case No. CR-14-587294-B and Case No. CR-14-587491-B. The prosecutor outlined the facts in Case No. CR-15-592623-A, more specifically that Smith was in the area of the Urban Community School located at approximately 4828 Lorain Road, Cleveland, Ohio. The trial court entered a finding of guilty. (Tr. 95.) Prior to sentencing, Keith filed a motion to dismiss the schoolyard

specifications contained in Counts 1 and 3 of the indictment for Case No. CR-15-592623-A.

**{¶10}** At the April 8, 2015 sentencing, the court outlined the different pleas that had been previously entered. Defense counsel spoke on behalf of Keith and requested Keith's motion to dismiss the schoolyard specifications, which elevated the offense to a first-degree felony, be granted. Defense counsel stated that the schoolyard specification was an arbitrary act on the state, that the amount of heroin was less than one percent over the minimum needed to elevate the offense to the next level, that all drug counts should be merged, and Keith should be sentenced on a felony of the second degree.

**{¶11}** The state spoke and then requested permission from the trial court to hear from Detective Michael J. Schroder ("Schroder"). Schroder was not involved in the case, but wished to inform the trial court of Keith's extensive criminal history as it relates to drug trafficking and usage. Schroder stated that he had knowledge of Keith's drug dealing when Keith sold drugs on his bicycle and later delivered drugs in rental cars. Upon completion of Schroder's statements, the court refused to strike the schoolyard specifications and sentenced Keith to an aggregate 27 years of imprisonment. The trial court did not give Keith an opportunity to address the court.

## II. Motion to Suppress

**{¶12}** "Appellate review of a trial court's decision to deny a motion to suppress is de novo." *State v. Murray*, 8th Dist. Cuyahoga No. 91368, 2009-Ohio-2130, ¶ 19.

The standard of review regarding motions to suppress is set forth by the Ohio Supreme Court as follows:

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

**{¶13}** Keith argues in the fourth assignment of error that he was denied due process of law when the court overruled his motion to suppress.

> The Fourth Amendment allows a police officer to stop and detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity may be afoot. A valid investigative stop must be based upon more than an inchoate and unparticularized suspicion or hunch that criminal activity is afoot. In deciding whether reasonable suspicion exists, courts must examine the totality of the circumstances of each case to determine whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. Under this totality of the circumstances approach, police officers are permitted to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. Thus, a court reviewing the officer's reasonable suspicion determination must give due weight to the officer's trained eye and experience and view the evidence through the eyes of those in law enforcement.

*State v. Paschal*, 169 Ohio App.3d 200, 2006-Ohio-5331, 862 N.E.2d 196, ¶ 9 - 11 (8th Dist.).

**{¶14}** Keith states that the trial court should have granted the motion to suppress because the evidence does not show there was reasonable suspicion or probable cause to arrest. Specifically, Keith illustrates several factors that would not justify reasonable suspicion, including: (1) Smith was touring for drug activities in the area where Keith was parked, (2) Smith was not completely confident that Keith possessed drugs, and (3) Norman only detained Keith based on Smith's observations. These factors, taken individually, are not necessarily sufficient for a claim of reasonable suspicion. However, reasonable suspicion is determined based upon the totality of circumstances.

**{¶15}** Smith observed Keith driving his car very slowly in an area known for prostitution and drug activity. Smith was there because of community complaints. Keith pulled into the vacant lot that no one ever pulls into. A woman approached Keith's car, entered, and he rolled something in white paper. Based on Smith's experience and training, he was able to infer that Keith's actions were suspicious. He then contacted Norman. "A police officer may make a brief, warrantless, investigatory stop of an individual where the officer reasonably suspects that the individual is or has been involved in criminal activity." *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In assessing that conclusion, the officer must be able to point to specific and articulable facts that, taken together with rational inference from those facts, reasonably warrant the intrusion. *State v. Jackson*, 8th Dist. Cuyahoga No. 86302, 2006-Ohio-2210, ¶ 22, citing *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991). Based upon

these specific facts, Smith possessed reasonable suspicion for the take down car to stop and detain Keith.

{¶16} Once Norman and the other officers approached Keith's vehicle, they ordered Keith to put his hands up, he did not comply, but hid something in his pants. Marijuana crumbs were observed on Keith's lap. Smith looked inside the car and observed a scale in plain view in the center console with brown residue on it. The plain view doctrine, if applicable, permits police officers to seize contraband, evidence, or the fruits or instrumentalities of crime without obtaining a prior search warrant. *State v. Coleman*, 11th Dist. Ashtabula No. 2001-A-0012, 2002-Ohio-3124, ¶ 15. For the plain view doctrine to apply to a warrantless seizure of property, it must be shown that: (1) the initial intrusion that afforded the authorities the plain view was lawful, (2) the discovery of the evidence was inadvertent, and (3) the incriminating nature of the evidence was immediately apparent. *State v. Williams*, 55 Ohio St.2d 82, 85, 377 N.E.2d 1013 (1978). *Jackson* at ¶ 24.

{¶17} Norman's initial intrusion was lawful, and the discovery of the scale was inadvertent because the officers were looking for the item being rolled in white paper. The incriminating nature of the scale with brown residue was immediately apparent. The officers had reasonable suspicion and probable cause to arrest Keith. We find that the trial court's ruling was supported by competent, credible evidence. The appellant's fourth assignment of error is overruled.

{¶18} In appellant's fifth assignment of error, Keith specifically argues that he was

denied due process of the law when the trial court failed to grant his motion to suppress when he was effectively seized by the actions of the police. The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. "To constitute an 'arrest', four requisites are involved: A purpose to take the person into custody of the law, under real or pretended authority and an actual or constructive seizure or detention of his person, so understood by the person arrested." State v. Terry, 5 Ohio App.2d 122, 128, 214 N.E.2d 114 (8th Dist.1966).

{¶19} Appellant contends that he was unlawfully seized when Norman blocked his car and he was not free to leave. A person has been "seized" for purposes of the Fourth Amendment when a law enforcement officer, by means of physical force or show of authority, has in some way restrained his or her liberty such that a reasonable person would not feel free to walk away. *United States v. Mendenhall*, 446 U.S. 544, 553-554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "The threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled" are examples of circumstances that might indicate that a seizure has occurred. *Mendenhall*, *supra* at 554, citing *State v. Brock*, 8th Dist. Cuyahoga No. 75168, 1999 Ohio App. LEXIS 5890 at *9-10 (Dec. 9, 1999).

{¶20} The facts show that Keith was not free to leave. Norman blocked Keith's auto from leaving the vacant lot. Norman had drawn his weapon, approached with

several officers, used language or a tone of voice indicating that the officers compelled compliance. These actions constitute a seizure. The Fourth Amendment allows a police officer to stop and detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity may be afoot. *Paschal*, 169 Ohio App.3d 200, 2006-Ohio-5331, 862 N.E.2d 196, ¶ 9 (8th Dist.). In the fourth assignment of error, it was determined that probable caused existed, therefore, Keith's seizure was lawful. Appellant's fifth assignment of error is overruled.

### III. Schoolyard Specification

{¶21} "An appellate court's standard of review for a motion to strike is an abuse of discretion by the trial court. An abuse of discretion is more than an error of law or judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably." *Bester v. Shilo*, 8th Dist. Cuyahoga No. 89355, 2007-Ohio-6987, ¶ 18.

{¶22} Keith contends that he was denied due process of law and equal protection of the law when the court overruled his motion to strike the schoolyard specification because possessing the same drug under the same circumstances elevated the offense. Additionally, defense counsel contends that the addition of the schoolyard specification is arbitrarily done by the state. "In order to convict a defendant of a schoolyard specification, the state must prove beyond a reasonable doubt that the drug transaction occurred on school premises, in a school building, or within 1,000 feet of the boundaries of any school premises." *State v. Manlet*, 8th Dist. Cuyahoga No. 93309,

2010-Ohio-3503, ¶ 26. It is important to note that Keith does not challenge the fact that he was within 1,000 feet of the boundaries of any school; Keith challenges the addition for enhancement purposes.

{¶23} Keith argues that there is no rational basis for the added schoolyard specification for possessing the same drugs at the same time under different sections of the statutes when the schoolyard specification did not apply to possession of the same drugs at the same time under a different statute, R.C. 2925.03(A)(2), 2925.03(C)(4)(e), and 2925.11(C)(4)(d). In each instance, the schoolyard specification was added to the cocaine and heroin trafficking counts while Keith was also charged with possession of cocaine and heroin. He specifically argues that the specification is arbitrary and capricious because the offenses of trafficking and possession of the same drugs are allied offenses. Thus, Keith is subjected to greater punishment for the underlying offense without proof of additional facts. Keith's argument is misplaced.

{¶24} Keith relies on *State v. Klembus*, 8th Dist. Cuyahoga No. 100068, 2014-Ohio-3227 (*"Klembus I"*). In *Klembus I*, the defendant was charged with two counts of operating a vehicle while under the influence of alcohol ("OVI") with a furthermore clause. Each count included a repeat OVI offender specification. Klembus filed a motion to dismiss the specification clause stating that it violated the Equal Protection Clause. He argued that the prosecutor added the repeat OVI offender specification to the underlying offense to arbitrarily obtain a higher prison sentence without proof of additional facts, elements, or circumstances.

{¶25} Therefore, stating there was cumulative punishment for identical conduct without a rational basis, this court reversed the trial court and reasoned that criminal statutes violate equal protection if they require identical proof but impose different penalties.

{¶26} In a recent Supreme Court of Ohio decision, *State v. Klembus*, Slip Opinion No. 2016-Ohio-1092 ("*Klembus II*"), it reversed the decision in *Klembus I*. On review, the court addressed whether: the repeat OVI specification codified in R.C. 2941.1413(A) is facially constitutional under the Equal Protection Clause of both the United States and Ohio Constitutions and when a defendant's conduct violates multiple criminal statutes, the government may prosecute under either, even when the two statutes prohibit the same conduct but provide for different penalties, so long as the government does not discriminate against any class of defendants based upon an unjustifiable standard. *Id.* at ¶ 6. The court reviewed *Klembus I* under a rational-basis review. To survive rational-basis review, the repeat-OVI specification must bear a rational relationship to a legitimate government interest. *Id*. at ¶ 9.

{¶27} The court examined the nature of a criminal offense in that the statute must prohibit specific conduct. The court went on to state that "specifications such as R.C. 2941.1413 do not prohibit conduct; they add sentencing enhancements to the violation of a predicate statute that does prohibit conduct." *Klembus II* at ¶17 citing *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, ¶ 16. The court concluded that specifications and higher felony levels may increase a sentence but does not prohibit

conduct. Specifically, the court stated, "[w]e hold that the two statutes are part of a logical, graduated system of penalties for recidivist OVI offenses. They are rationally related to the protection of the public and punishment of offenders and therefore do not violate equal protection." *Id.* at ¶ 2.

**{¶28}** R.C. 2925.03(A)(2), 2925.03(C)(4)(e), and 2925.11(C)(4)(d) therefore describes Keith's prohibited conduct and the schoolyard specification added a sentencing enhancement that was rationally related to the protection of the public. The two statues are part of a logical, graduated system of penalties. Keith's prohibited conduct was trafficking heroin and cocaine and his penalty was enhanced for being within 1,000 feet of a school. Therefore, the addition of the schoolyard specification did not violate equal protection of the law.

**{¶29}** Additionally, Keith pleaded no contest to the charges contained in the indictment. "Under Crim.R. 11(B)(2), the plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment." *State v. Miller*, 8th Dist. Cuyahoga No. 102250, 2015-Ohio-3880, ¶ 5. "By voluntarily entering a no contest plea, the defendant waives his right to contest nonjurisdictional defects that occurred before the plea was entered." *Id.* By pleading no contest, Keith admits that the facts contained in the indictment are true. The appellant's sixth assignment of error is overruled.

**IV. Right to Allocution**

**{¶30}** "The Ohio Supreme Court has determined that Crim.R. 32(A)(1) confers an absolute right of allocution." *State v. Gray*, 8th Dist. Cuyahoga No. 81474, 2003-Ohio-436, ¶ 15 citing *State v. Green*, 90 Ohio St.3d 352, 358, 738 N.E.2d 1208 (2000). "The Court in *Campbell* held that because the right of allocution is an absolute right, it cannot be waived." *Id.*, citing *State v. Campbell*, 90 Ohio St.3d 320, 324, 738 N.E.2d 1178 (2000). "Crim.R. 32(A)(1) specifically provides that before imposing sentence, 'the court shall * * * address the defendant personally' and inquire as to whether the defendant wishes to exercise his or her right to allocution." *Campbell* at 324.

**{¶31}** "The rule does not merely give the defendant a right to allocution; it imposes an affirmative requirement on the trial court to 'ask if he or she wishes to' exercise that right." *Id.* The court in *Campbell* then addressed the requirement in Crim.R. 32(A)(1) by stating:

> "[W]e have repeatedly recognized that use of the term 'shall' in a statute or rule connotes the imposition of a mandatory obligation unless other language is included that evidences a clear and unequivocal intent to the contrary."

*Id.* at 325, citing *State v. Golphin*, 81 Ohio St. 3d 543, 545-546, 692 N.E.2d 608, 611 (1998).

**{¶32}** In this case, the trial court did not give Keith an opportunity to exercise his right to allocution. "The purpose of allocution is to allow the defendant an additional opportunity to state any further information which the judge may take into consideration when determining the sentence to be imposed." *State v. Sanders*, 8th Dist. Cuyahoga No. 81450, 2003-Ohio-1163, ¶ 13. "Furthermore, a judge must 'painstakingly' guarantee the right of allocution at sentencing because it is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *Id.* "Therefore, the failure to grant allocution should be presumed prejudicial unless shown harmless." *Id.*

**{¶33}** Defense counsel, the prosecutor, and Schroder were allowed to speak, but Keith was never addressed by the court until the sentence was given. The record indicates that Keith did not waive his right to allocution. The trial court had a statutory duty to give Keith an opportunity to speak on his own behalf. The trial court failed to so. Keith's sentences are hereby vacated, and we remand to the trial court for resentencing giving Keith an opportunity to allocute. The appellant's first assignment of error is sustained.

**{¶34}** For reasons stated in this opinion, we affirm the trial court's decision to deny appellant's motion to suppress and motion to strike. We vacate Keith's sentences for denial of allocution, and remand to the trial court for resentencing. Additionally, the remaining assignments of error need not be addressed pursuant to App.R. 12(A)(1)(c).

It is ordered that the appellee and appellant split costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY EILEEN KILBANE, P.J., and
EILEEN T. GALLAGHER, J., CONCUR