[Cite as *State v. Hunter*, 2012-Ohio-2302.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97086**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## GARY HUNTER

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-543293

**BEFORE:** Kilbane, J., Jones, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** May 24, 2012

**ATTORNEY FOR APPELLANT**

Mark R. Marshall
P.O. Box 451146
Westlake, Ohio 44145

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Nicole Ellis
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1}   Defendant-appellant, Gary Hunter, appeals from the order of the trial court that denied his motion to suppress.   For the reasons set forth below, we affirm.

{¶2}   Defendant was arrested on October 15, 2010.   Thereafter, on November 10, 2010, he was charged with possession of phencyclidine ("PCP"), in violation of R.C. 2925.11(A), a third degree felony, and possession of criminal tools ($300), in violation of R.C. 2923.24(A), both with a specification for the forfeiture of $300.   On January 11, 2011, defendant filed a motion to suppress the evidence obtained against him, arguing that the charges were the result of an illegal stop and an unlawful search.

{¶3}   The trial court held an evidentiary hearing on the motion to suppress on March 25, 2011.   At the start of the hearing, the State and the defense stipulated that the Cleveland police laboratory analysis of the substance recovered from defendant in connection with this matter indicated that it was PCP, weighing 13.19 grams.   The State presented the testimony of Cleveland police officer Vasile Nan ("Officer Nan").   Officer Nan testified that at approximately 7:40 p.m. on October 15, 2010, he and his partner, Officer Freeman, responded to a dispatch that a man wearing a burgundy hooded sweatshirt was selling drugs at 10206 Way Avenue.   The officers did not observe anyone at that location.   They then scanned the surrounding three-block area.

**{¶4}** At the intersection of East 104th Street and Way Avenue, they observed two males standing on the sidewalk. One of the men, later identified as defendant, was wearing a red jacket, so the officers notified dispatch that they were responding to the original call and exited their cruiser to speak with the two men.

**{¶5}** The officers stood about 20 feet from the men and instructed them to take their hands out of their pockets. According to Officer Nan, this request was made simply as a safety precaution and is made of "pretty much anybody we encounter." The officers asked for their names and addresses. Defendant's companion cooperated with the officers, but the defendant appeared confused, sluggish, and made grunting noises in response to the questions. During the encounter, Officer Nan detected the odor of PCP, which he described as "a very strong ethanol smell, alcoholish, * * * a little sweet, kind of possibly as radiator coolant, * * * a combination of the two."

**{¶6}** Defendant reportedly told the officers that he had smoked PCP earlier. Officer Nan told his partner to use caution because, in his experience involving approximately 150 PCP-related arrests, persons using PCP do not feel pain, are frequently disorderly, and are generally taken to the hospital for treatment.

**{¶7}** Officer Nan further testified that after many requests that defendant put his hands on the cruiser, he eventually complied, and the officer patted him down. Officer Nan detected a very small vial that he believed to be a "personal use vial" of PCP. Officer Nan removed the vial from defendant's pocket. According to this witness, the cap was broken and the vial emitted the very strong odor of PCP.

**{¶8}** On cross-examination, Officer Nan admitted that the officers stopped defendant away from the location mentioned in the original police dispatch, and that he was not wearing a burgundy sweatshirt. He also admitted that the officers did not observe him selling drugs, he was not combative, and did not flee when the police confronted him.

**{¶9}** On May 2, 2011, the trial court denied the motion to suppress. Thereafter, on May 11, 2011, defendant pled no contest to the indictment, and the trial court found him guilty of the charges and specifications. On July 1, 2011, the trial court sentenced defendant to two years of community control sanctions.

**{¶10}** Defendant now appeals, assigning the following interrelated errors for our review:

## ASSIGNMENT OF ERROR I

The trial court erred in denying appellant's motion to suppress evidence and failing to find that the police officers performed an illegal stop because they lacked reasonable suspicion that appellant was engaged in criminal activity.

## ASSIGNMENT OF ERROR II

The trial court erred in denying appellant's motion to suppress evidence and failing to find that the police officers performed an illegal pat down search under *Terry v. Ohio* because they lacked reasonable suspicion that appellant was armed and dangerous or a threat to their safety.

## ASSIGNMENT OF ERROR III

The trial court erred in denying appellant's motion to suppress evidence and failing to find that the police officers exceeded the brief investigatory stop

under *Terry v. Ohio* as the nature of the contraband was not immediately apparent.

**{¶11}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). The reviewing court applies a de novo standard of review to the trial court's conclusion of law, however, and determines whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara* , 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1987).

**{¶12}** The Fourth Amendment to the United States Constitution provides protection against unreasonable searches and seizures. Searches conducted without a warrant are per se unreasonable, subject to certain limited exceptions. *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, ¶ 10.

**{¶13}** One category of permissible warrantless stops are consensual encounters that occur when the police approach an individual, identify themselves, request information, and the individual remains free to disregard the questions and walk away. *United States v. Mendenhall*, 446 U.S. 544, 555-556, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Consensual encounters may become seizures, however, even where the person did not attempt to leave, where the encounter involves the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of

the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Id*. at 556. But consensual encounters do not become seizures, however, where the officer fails to inform the individual that he is free to walk away, or where the officer requests the individual's identification. *Id.*

{¶14} A second type of permissible warrantless stop is an investigative or "*Terry* stop," which occurs where an officer has a reasonable suspicion based upon specific and articulable facts that an individual is or has been engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889. In that instance, where in the course of investigating this behavior, an officer identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, for the protection of himself and others in the area, he is entitled to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons that might be used to assault him. *Id*.

{¶15} *Terry* patdowns are limited in scope to the search for weapons. *Terry* at 29. If, however, during a patdown an officer detects an item of an "immediately apparent" incriminating nature, the officer may seize the nonthreatening contraband under the "plain feel" exception to the warrant requirement. *Minnesota v. Dickerson*, 508 U.S. 366, 374-375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

{¶16} Finally, we note that under the community-caretaking/ emergency-aid exception to the Fourth Amendment, police officers may stop a person to render aid if

they reasonably believe that there is an immediate need for their assistance to protect life or prevent serious injury. *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, syllabus. In *Dunn*, the police responded to a dispatch that there was a suicidal male driving a tow truck and that he was planning to kill himself. They stopped the tow truck, removed the defendant from the vehicle, and handcuffed him. As the officers brought him to the police cruiser, the defendant told them that his weapon was in the glovebox. The defendant was later indicted for improper handling of a firearm in a motor vehicle. In denying his motion to suppress, the trial court concluded that the officers were responding to an emergency situation. The appellate court reversed, but the Ohio Supreme Court determined that the trial court had properly denied the motion to suppress. The *Dunn* court stated:

> Given that stopping a person on the street is "considerably less intrusive than police entry into the home itself," *Illinois v. McArthur,* 531 U.S. 326, 336, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001), the officers' effecting a traffic stop to prevent Dunn from harming himself was reasonable under the Fourth Amendment. Thus, the community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement allows police officers to stop a driver based on a dispatch that the driver is armed and plans to kill himself. *Dunn* at ¶ 23.

{¶17} In this matter, the record indicates that the officers responded to a dispatch that a man wearing a burgundy hooded sweatshirt was selling drugs at 10206 Way

Avenue. The officers did not observe anyone at that location, so they drove around in the surrounding three-block area. At the intersection of East 104th Street and Way Avenue, they observed the defendant in a red jacket standing with another man.

{¶18} The officers exited their cruiser and spoke with the men from a distance of about 20 feet away. As a safety precaution, they instructed the men to take their hands out of their pockets and asked for their names and addresses. The man with defendant cooperated with the officers, but defendant appeared confused and sluggish and did not respond. Officer Nan moved to within eight feet of defendant, and he immediately detected the distinct odor of PCP. According to Officer Nan, it is "a very strong ethanol smell, alcoholish, * * *a little sweet, kind of possibly a radiator coolant, if you can imagine that, a combination of the two." The officers asked defendant if he had smoked PCP that day, and the defendant told them that he had done so earlier. Officer Nan then patted defendant down and detected a very small vial that he believed to be a "personal use vial" of PCP with a broken cap.

{¶19} In our view, the record establishes that the officers proceeded to investigate the area in good faith reliance upon the tip of men selling drugs. During their conversation with the men, defendant was sluggish, appeared dazed and confused, and repeatedly failed to answer the officers' questions. Although the officers demanded that defendant take his hands from his pockets, the record demonstrates that as the officer took a few steps closer to defendant, he quickly detected the distinct odor of PCP from defendant. Defendant then told the officers that he had smoked PCP earlier, and this

created a reasonable suspicion, based upon specific and articulable facts, that an individual is or has been engaged in criminal activity such to justify a search of defendant's outer clothing under *Terry*. *Accord State v. Wilson*, 8th Dist. No. 94097, 2010-Ohio-5478 (patdown permissible where officers detected odor of PCP); *State v. Dunn*, 8th Dist. No. 85435, 2005-Ohio-3477.

**{¶20}** Further, the evidence demonstrated that defendant appeared confused, and smelled of PCP, and that suspects under the influence of this drug are typically disorderly and are taken to the hospital for treatment. Therefore, the officers properly stopped him under the community- caretaking/emergency-aid exception to the Fourth Amendment.

**{¶21}** Moreover, according to the testimony of record, the incriminating nature of the vial of PCP was immediately apparent and was therefore properly seized under the "plain feel" exception to the warrant requirement. *State v. Dietry*, 9th Dist. No. 03CA0052, 2004-Ohio-2661; *State v. Russo*, 9th Dist. No. 2966-M, 2000 WL 150767.

**{¶22}** The assignments of error are without merit.

**{¶23}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

LARRY A. JONES, SR., P.J., and
COLLEEN CONWAY COONEY, J., CONCUR