[Cite as *State v. Forester*, 2015-Ohio-98.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101084**

**STATE OF OHIO**

PLAINTIFF-APPELLANT

vs.

**DANIEL F. FORESTER**

DEFENDANT-APPELLEE

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-579705-A

**BEFORE:** Rocco, P.J., E.A. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** January 15, 2015

**ATTORNEYS FOR APPELLANT**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: John D. Kirkland
        Brett Hammond
Assistant Prosecuting Attorneys
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

**ATTORNEY FOR APPELLEE**

Mark A. Defranco
55 Public Square
Cleveland, Ohio   44113

KENNETH A. ROCCO, P.J.:

{¶1} Plaintiff-appellant the state of Ohio appeals from the trial court order that granted a motion to suppress evidence filed by defendant-appellee Daniel F. Forester in this case. Forester is charged with burglary and theft.

{¶2} The state presents a single assignment of error, claiming that the trial court's order is improper, because the officers simply were conducting a stop of Forester as authorized by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This court agrees. Consequently, the trial court's order is reversed, and this case is remanded for further proceedings.

{¶3} The following testimony was presented at the suppression hearing.

{¶4} Parma police officer Thomas Kuchler was on patrol in his zone car on the afternoon of October 8, 2013, when dispatch notified him that a call had been made to the department of a "suspicious male" who was "walking down the street" and "looking into backyards" in the area of Milford and Torrington Roads. Kuchler and another police vehicle, driven by "patrolman Brink," both responded.

{¶5} Upon their arrival, Kuchler and Brink observed a male "walking" westbound on Milford. Both exited their cars and approached the male, who was Forester. Kuchler asked Forester if he could speak to him. Forester seemed cooperative and the three "converged."

{¶6} However, before Kuchler could begin to ask Forester any questions, "Brink pointed at his pocket and said, what is that in your pocket?" Forester stated that "it was a knife." At that point, the officers asked Forester to place his hands on the patrol car, patted him down, and recovered a knife from his pants pocket. Forester was arrested and handcuffed for "carrying a concealed weapon."

{¶7} The officers then "continued the search" of Forester's person and found additional items "that were of interest," viz., a glass pipe that smelled of marijuana and a stack of envelopes

containing what appeared to be "collectible coins." The officers asked Forester how he came by the items, and Forester "couldn't quite explain." They then asked him "how he got here." Forester replied that he drove. They asked him where his car was, and he pointed to a side street. Brink took Forester in his patrol car while Kuchler located Forester's car, which was parked on W. 48th Street. The officers placed the coins into "property found" while they placed the knife into evidence.

{¶8} Two days later, Jason Cooke, a Milford Road resident, reported that some coins had been stolen from a bedroom near an open window. When he came to the police station, he identified the coins and the knife taken from Forester as the items that were missing from his home.

{¶9} The Parma detective assigned to the case signed a complaint against Forester, and he was subsequently indicted on one count of burglary and one count of theft. Forester eventually filed a motion to suppress the evidence in this case.

{¶10} The trial court conducted a hearing on the motion. After considering the officers' testimony, the trial court granted Forester's motion. The court determined that: (1) Forester was "seized" when the officers approached him, (2) prior to that point, the officers had not observed any possible criminal conduct on Forester's part, and (3) the informant had not provided the police with any information that Forester had been engaging in any possible criminal conduct.

{¶11} The state appeals from the trial court's order with one assignment of error. In its assignment of error, the state contends that the police were simply conducting a lawful investigatory stop, therefore, the trial court's order is improper. This court agrees.

{¶12} The trial court assumes the role of trier-of-fact when considering a motion to suppress, thus, the court is in the best position to resolve factual questions and evaluate the

credibility of a witness. *State v. Kobi*, 122 Ohio App.3d 160, 701 N.E.2d 420 (6th Dist.1997). An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Accepting the facts as found by the trial court as true, the appellate court independently determines as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. *Id.*

{¶13} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968). In order to conduct a lawful investigatory stop, the police need only establish a reasonable suspicion based on specific and articulable facts that defendant is or was engaged in criminal activity. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *State v. Lane*, 8th Dist. Cuyahoga No. 89023, 2007-Ohio-5948, ¶ 17; *compare Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). The question of whether reasonable grounds for a stop exist must be viewed in light of the totality of the circumstances. *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

{¶14} In this case, the facts presented to the trial court indicated that a citizen informant called to report suspicious behavior in his or her neighborhood that might have constituted the crime of trespass. The officers were ordered to investigate, and told to look for a man who was wearing a white T-shirt and camouflage pants, walking on a specific street, and looking into "backyards" as he walked. As the officers were bound to do by their duty, they followed those orders, and saw Forester, who matched the description provided by their dispatcher. *Alabama v.*

*White*, 496 U.S. 325, 110 S. Ct. 2412, 110 L.Ed.2d 301 (1990). The officers intended at that point only to engage Forester in conversation about his activities. Hence, this situation constituted an investigative stop.

**{¶15}** Because the officers exited their cars merely to "converge" with Forester, the encounter was, in effect, consensual to that point. *Terry.* The officer's question to Forester, "What do you have in your pocket?" was posed merely for officer safety during the encounter in accord with *Terry* rather than in order to elicit an incriminating statement. When Forester admitted that he carried a knife, however, he thereupon provided the officers with probable cause to arrest him for carrying a concealed weapon and with authority to seize the knife incident to the arrest. *Id.*; *see also In re Long*, 5th Dist. Stark No. 2004-CA-00377, 2005-Ohio-3825.

**{¶16}** The circumstances presented in this case demonstrate the officers were conducting an investigatory stop based upon specific articulable facts, and questioned Forester only for officer safety during the encounter. *State v. Hunter,* 8th Dist. Cuyahoga No. 97086, 2012-Ohio-2302; *see also Akron v. Lacey*, 9th Dist. Summit No. 10327, 1982 Ohio App. LEXIS 12236 (Apr. 7, 1982). Consequently, the trial court erred in granting Forester's motion to suppress evidence.

**{¶17}** The state's assignment of error is sustained. The trial court's decision is reversed, and this case is remanded for further proceedings.

It is ordered that appellant recover from appellee costs herein taxed. The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, PRESIDING JUDGE

MELODY J. STEWART, J., CONCURS;
EILEEN A. GALLAGHER, J., DISSENTS
(SEE ATTACHED OPINION)

EILEEN A. GALLAGHER, J., DISSENTING:

**{¶18}** I respectfully dissent from the opinion of my learned colleagues.

**{¶19}** At the suppression hearing, Officer Kuchler testified that Forester was cooperative, answered questions and provided identification upon request. Forester was not belligerent, did not make any furtive movements and did not appear to be trying to conceal anything. Kuchler testified that the officers possessed no information to suggest that Forester had committed a crime, was about to commit a crime or that Forester was armed and, further, they had no concern for their safety.

**{¶20}** In *State v. Preztak*, 181 Ohio App.3d 106, 2009-Ohio-621, 907 N.E.2d 1254 (8th Dist.), this court outlined the standard of review on a motion to suppress.

> Our standard of review with respect to motions to suppress is whether the trial court's findings are supported by competent, credible evidence. See *State v. Winand*, 116 Ohio App.3d 286, 688 N.E.2d 9 (7th Dist.1996), citing *City of Tallmadge v. McCoy*, 96 Ohio App.3d 604, 645 N.E.2d 802 (9th Dist.1994). This is the appropriate standard because "in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of facts and is in the best position

to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 679 N.E.2d 321 (2nd Dist.1996).

**{¶21}** After accepting such factual findings, the reviewing court must independently determine, as a matter of law, whether the applicable legal standard has been satisfied. *State v. Jones*, 8th Dist. Cuyahoga No. 99837, 2014-Ohio-496.

**{¶22}** The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). An investigative stop, or "*Terry-stop*," is a common exception to the Fourth Amendment warrant requirement. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As stated by this court in *State v. Paschal*, 169 Ohio App.3d 200, 2006-Ohio-5331, 862 N.E.2d 196 (8th Dist.):

> In the seminal case of *Terry v. Ohio*, the United States Supreme Court explained that the Fourth Amendment allows a police officer to stop and detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 9, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968); see also *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991). A valid investigative stop must be based upon more than an inchoate and unparticularized suspicion or hunch that criminal activity is afoot. *United States v. Arvizu*, 534 U.S. 266, 151 L.Ed.2d 740, 122 S.Ct. 744 (2002); *Terry* at 27.

> In deciding whether reasonable suspicion exists, courts must examine the "totality of the circumstances" of each case to determine whether the detaining officer has a "particularized and objective basis' for suspecting legal wrongdoing." *Arvizu*, quoting, *United States v. Cortez*, 449 U.S. 411, 417-418, 66 L.Ed.2d 621, 101 S.Ct. 690 (1981); *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1981), citing *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980).

> Under this totality of the circumstances approach, police officers are permitted to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Arvizu*, quoting, *Cortez* at 418. Thus, a court reviewing the officer's reasonable suspicion determination must give due weight

to the officer's trained eye and experience and view the evidence through the eyes of those in law enforcement. *Id*. See also *Andrews*, at 87-88.

**{¶23}** The state argues that the officers had a reasonable suspicion to conduct a *Terry*-investigative stop on Forester based on the information provided by the 911 caller. I disagree. The tip received by police simply described a man walking through the neighborhood and looking down driveways. As noted by the trial court, the caller did not witness any illegal activity and there was nothing in the caller's tip that suggested Forester was engaged in or about to be engaged in criminal activity. Finally, Officer Kuchler admitted that he and his partner did not attempt to covertly observe Forester's actions prior to stopping him and Forester did not make any furtive movements or act in a suspicious manner when approached.

**{¶24}** Although the Fourth Amendment prohibits unreasonable seizures, not every police-citizen encounter constitutes a "seizure" subject to Fourth Amendment scrutiny. *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). A Fourth Amendment seizure does not occur when a law enforcement officer "merely approach[es] an individual on the street or in another public place" and "ask[s] him if he is willing to answer some questions." *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred. *Terry* at 19. A "seizure" of the person occurs when, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' *Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), quoting *Michigan v. Chesternut*, 486 U.S. 567, 569, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)."

Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

(Citations omitted.) *Mendenhall* at 554.

**{¶25}** "[T]he test for existence of a show of authority is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

"[A]n encounter becomes a seizure if the officer engages in conduct which a reasonable man would view as threatening or offensive even if performed by another private citizen. This would include such tactics as pursuing a person who has attempted to terminate the contact by departing, continuing to interrogate a person who has clearly expressed a desire not to cooperate, renewing an encounter with a person who earlier responded fully to police inquiries, calling to such a person to halt, holding a person's identification papers or other property, blocking the path of the suspect, physically grabbing and moving the suspect, drawing a weapon, and *encircling the suspect* by many officers * * *."

(Emphasis added.) *State v. Blankenship*, 4th Dist. Ross No. 13CA3417, 2014-Ohio-3600, ¶ 13, quoting 4 LaFave, *Search and Seizure,* Section 9.3(a), at 102-104 (3 Ed.1996) (footnotes omitted).

**{¶26}** The trial court in this instance found that the officers seized or detained Forester by a show of authority. I agree. The officers arrived on the scene in uniform driving separate marked police vehicles. Although Officer Kuchler testified that the encounter began with a request to speak with Forester, the trial court was in the best position to weigh this testimony and was free to discount it in light of the police report that indicated the officers began with a demand to know what Forester was doing in the area. Forester complied with the officer's requests for

identification and while he stood face to face with Officer Brink, Officer Kuchler testified to "quartering behind" Forester during Brink's questioning. Considering these facts objectively, particularly Officer Kuchler's encircling of Forester, a reasonable person would not feel free to disregard the police and go about his business.

{¶27} It is my opinion that the trial court correctly granted Forester's motion to suppress because he was seized pursuant to a show of authority without reasonable suspicion to support the stop.

.